Peter I. IDUSOGIE, Petitioner,

v.

Mary KIFFMEYER, Secretary of State of Minnesota, Respondent.

No. A06–1516.

Supreme Court of Minnesota.

Sept. 14, 2006.

Peter I. Idusogie, Minneapolis, MN, pro se.

Mike Hatch, State Attorney General, Christie B. Eller, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

PER CURIAM.

By a letter dated July 21, 2006, the office of Secretary of State Mary Kiffmeyer notified petitioner, Peter I. Idusogie, that his nominating petition for the office of United States Senator from Minnesota lacked the number of signatures "required by law." After receiving this letter, Idusogie filed a petition with our court under Minn.Stat. § 204B.44 (2004) requesting an order directing the secretary of state to place his name on the ballot for the September 12, 2006 primary election, and the November 7, 2006 general election. Idusogie alleges in his petition that the secretary of state wrongly rejected his nominating petition and wrongly prevented him from filing additional signatures in support of his candidacy. This opinion confirms our order filed on August 22, 2006, denying Idusogie's petition.

Candidates for elective office in Minnesota must file with the secretary of state an affidavit of candidacy under Minn.Stat. §§ 204B.03 and 204B.06 (2004). In addition, candidates seeking the nomination of a "minor" political party and candidates running independently of any political party must file a "nominating" petition. Minn.Stat. § 204B.03. The requirements for a nominating petition are set forth in Minn.Stat. §§ 204B.07 and 204B.08 (2004). Pertinent to this case is the requirement that the number of signatures on a nominating petition for United States Senator be "one percent of the total number of individuals voting in the state at the last preceding state general election, or 2,000, whichever is less." Minn.Stat. § 204B.08, subd. 3(a) (2004). Minnesota Statutes § 204B.08, subd. 1 (2004), further requires

that nominating petitions "shall be signed during the period when petitions may be filed as provided in section 204B.09," that is, during the 14–day filing period, between the 70th and the 56th day before the day of the state primary election. Minn. Stat. § 204B.09, subd. 1 (2004).

On July 18, 2006, Idusogie filed with the secretary of state an affidavit of candidacy for United States Senator, together with a nominating petition bearing approximately 1,000 signatures.[1] Idusogie also sought to use his nominating petition in place of the $400 filing fee required under Minn.Stat. § 204B.11, subd. 1(b) (2004), as is permitted under Minn.Stat. § 204B.11, subd. 2 (2004). It is undisputed that Idusogie's nominating petition bore far fewer than the 2,000 signatures required to nominate Idusogie for the office of United States Senator or the 2,000 signatures required under Minn.Stat. § 204B.11, subd. 2(a) (2004), on a petition in place of the filing fee.

 Idusogie asserts he should be permitted to add additional signatures to his nominating petition because there is no set time limit for obtaining signatures on petitions filed in place of the required filing fee under Minn.Stat. § 204B.11, subd. 2. We reject Idusogie's argument for three reasons. First, Minn.Stat. § 204B.08, subd. 1, unequivocally requires that nominating petitions be signed during the 14–day filing period, which in 2006 ran from July 4 to July 18. As a result, section 204B.08 bars Idusogie from using signatures gathered after the end of the filing period to satisfy the requirements of a nominating petition. Second, Minn.Stat. § 204B.09, subd. 1(c) (2004), unequivocally bars the secretary of state from accepting a petition after 5 p.m. on the last day of

filing for elective office. As a result, even if Idusogie had additional signatures obtained during the filing period, section 204B.08 bars the secretary of state from accepting those signatures after 5 p.m. on the last day of filing, whether they are considered signatures on a nominating petition or a petition in place of the filing fee. Finally, although Minn.Stat. § 204B.11, subd. 2, allows an independent candidate like Idusogie to use his nominating petition as a petition in place of the filing fee, nothing in chapter 204B allows a candidate to use the petition in place of the filing fee as a nominating petition.

Idusogie also asks us to declare unconstitutional the laws governing nominating petitions for candidates who do not seek the nomination of a major political party. Because Idusogie's request may implicate both the guarantee of equal protection under the Fourteenth Amendment and the right of association under the First Amendment, we will address his claim under both theories.

 Idusogie's claim could be construed to assert that Minn.Stat. §§ 204B.04 and 204B.08 (2004) are unconstitutional because they infringe upon his equal protection rights under the Fourteenth Amendment by imposing a burden on him not also imposed on candidates seeking the nomination of major political parties. But we conclude that we need not reach Idusogie's equal protection claim because, contrary to Idusogie's argument, Minn.Stat. § 204B.09 (2004) imposes the same filing deadlines on all candidates, and Minn.Stat. § 204B.09, subd. 1(c), bars the secretary of state from accepting late petitions and affidavits from all candidates, whether they seek the nomination of major political par-

---

1. After initially counting 1,070 signatures on Idusogie's nominating petition, employees in the secretary of state's office ultimately determined that Idusogie had submitted 995 signatures, of which 916 appeared to be valid.

ties, minor political parties, or run as independent candidates.

■ Idusogie's argument could also be construed as a claim that the requirements of a nominating petition violate his First Amendment right of association. We note that the United States Supreme Court has recognized the interest of the state in regulating the number of candidates on the ballot to avoid undue voter confusion. *Am. Party of Texas v. White*, 415 U.S. 767, 782 n. 14, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974). As a result, the Court has recognized the right of the state to require "some preliminary showing of a significant modicum of support" before putting a candidate's name on the ballot. *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). In light of the foregoing case law and for reasons similar to those addressed in Idusogie's equal protection claim, we conclude that under the facts and circumstances of this case, we need not address this issue because Idusogie has failed to articulate a colorable claim that his First Amendment right of association has been violated.

■ For the foregoing reasons, we conclude that under Minnesota law a candidate for elective office may not file additional signatures for a nominating petition and/or a petition filed in place of the required filing fee after 5 p.m. on the last day for filing for elective office. Therefore, we hold that the secretary of state properly rejected Idusogie's nominating petition because it lacked the number of signatures required under Minn.Stat. § 204B.08, subd. 3(a).

Petition denied.